Filed 12/31/24  Hinajon v. Ginsberg CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LEIZL HINAJON,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RUSSELL GINSBERG,<br><br>        Defendant and Appellant. | A170373<br><br>(San Francisco City & County<br>Super. Ct. No. CCH 24-586617) |

In March 2024, respondent Leizl Hinajon filed a request for a civil harassment restraining order against her downstairs neighbor, appellant Russell Ginsberg.  The request alleged that over an almost two-year period since she moved in, Ginsberg and his wife's complaints about noise from Hinajon's apartment had escalated into a pattern of pervasive and severe harassment.  At the beginning of the hearing on the petition, Ginsberg suggested that he wanted to "get a continuance until we can get a lawyer in here."  The trial court did not grant the continuance, and after explaining that "most of these cases don't have lawyers" and "it's not really going to help a lot to get a lawyer," the hearing proceeded, at the conclusion of which the trial court granted Hinajon's request for a three-year restraining order.  Ginsberg argues that the trial court erred in failing to grant him a continuance under Code of Civil Procedure section 527.6, subdivision (o), and

that the trial court denied him a fair trial by suggesting to him that counsel was not necessary.  We affirm.

## BACKGROUND

On March 5, 2024, Hinajon filed a request for a civil harassment restraining order against Ginsberg in San Francisco Superior Court, using Judicial Council pre-printed form CH-100.  The petition alleged that "Russel[l] and [his wife] are my downstairs neighbors, who have had issues with me since I moved into the building in April 2022."  The petition attached a three-page timeline detailing some 32 instances of alleged harassment, beginning on May 28, 2022, when Russell "physically approached me to question me about what I was doing in my home at night and asked if 'I was sleeping soundly last night.' "  The timeline alleged that Ginsberg and his wife had repeatedly banged on their ceiling (Hinajon's floor), presumably to complain about noise, and had sent numerous unsolicited emails complaining about noise from Hinajon's apartment, including ones in which Russell "question[ed] what I am doing in my home," "who is in my home," and "accuse[d] me of lying."  The petition also alleged that Russell asked another resident of the building for Hinajon's contact information, despite having been asked not to contact her except using the dispute resolution procedure in the building's CC&Rs, and that he falsely claimed that he needed to know who was in her apartment for "insurance purposes."

The petition went on to allege that in August 2023, Hinajon sent a cease and desist letter to Ginsberg and his wife, and in October 2023, received a response from a lawyer for Ginsberg "stating that I should only contact him for any other issues regarding the noise complaints."  Hinajon alleged that she respected this request, but nevertheless, in February 2024, Ginsberg's wife "came up the back steps of our condominium and banged on

my back door," and when Hinajon did not open the door, "yelled at me through the back door about noise." Hinajon called the police, and Ginsberg's wife was "advised not to come up to my back door again and to call the police if she had a noise complaint." In March, Ginsberg "came up the back staircase to look into my apartment and through my trash." When Hinajon called the police, Ginsberg "confirmed to [them] that he was looking into my apartment for various bizarre reasons, including to look for my pet."

The petition also asked for protection for Hinajon's fiancée, H.L., who began living with Hinajon in February of 2024 and had been periodically staying in the building since January 2023.

On March 6, the court issued a temporary restraining order, requiring that Ginsberg stay 25 yards away from Hinajon, or three yards when both parties are inside their building, and that Ginsberg refrain from "banging on [the] ceiling."

On March 28, the trial court held a hearing on the petition. At the beginning of the hearing, the following exchange took place:

"THE COURT: Yes. You've been sworn. So Mr. Ginsberg, I have a little note here that you have an attorney, but you're representing yourself in this thing, which is perfectly okay.

"MR. GINSBERG: Actually, the reason that I'm here is for a few reasons. And one of them is to get a continuance until we can get a lawyer in here. But in the meantime, a couple of things need to be dealt with.

"First of all, I have a restraining order that mentions violence or potential violence. It also has a second person who I've never met, is somebody who's protected here. And so again, my hope is that, at least temporarily, that we can remove this—whatever this is because she lives above us, and the idea of staying one—100 yards away is not feasible.

3

"THE COURT: No, that wouldn't be. So I'm assuming you're not a lawyer?

"MR. GINSBERG: I am not a lawyer.

"THE COURT: You're not a lawyer? Okay. Now, to tell you the truth, most of these cases don't have lawyers.

"MR. GINSBERG: Okay.

"THE COURT: People just come in. You've been sitting here. And so then, it's not really going to help a lot to get a lawyer.

"MR. GINSBERG: Okay.

"THE COURT: Now, I hear your concern regarding the allegations, but that's what people do. They accuse other people of certain behavior. So then it's up to me to figure out whether the allegations are true. So then, I understand that you object to these accusations against you. But they need to be resolved in some way, shape, or form. Now what I—you read the application, right, and everything that's being—

"MR. GINSBERG: I did, in fact. There's a—I apologize. There's a gentleman here. I assume it's the gentleman—additional protected person, [H.L.] And I've not yet this—

"THE COURT: Okay.

"MR. GINSBERG: I have not yet met this person or been introduced to this person."

After the trial court confirmed that the gentleman was H.L., it explained that "if a protective order is issued in favor of somebody, typically anybody who lives in their household is also protected," that the temporary restraining order only required Ginsberg to stay 25 yards away from Hinajon and H.L., and three yards when all parties are inside their building, that "even if it has nothing to do with violence . . . behavior is prohibited if it's

4

pervasive and severe harassment," and that violating a civil restraining order is "serious" and could lead to Ginsberg's arrest.

The trial court then questioned Ginsberg regarding the allegations. He explained that "all we have ever requested was please follow the rules in the CC&Rs and the quiet times," and that he did not know how sending an email "reminding [Hinajon] of the CC&Rs" for the building could be harassment. He further complained that he and his wife could hear "the clippity clop of high heels" and "at 6:00 in the morning, we hear what sounds like boots being dropped on the floor," and the sound of Hinajon's "dog [running] up and down the hall."[1]

The trial court then offered Hinajon an opportunity to address the allegations. Hinajon explained that "I have continually asked Mr. Ginsberg not to contact me, not to bang on the ceiling to get my attention," that she "[did] not want to be here," and that seeking a restraining order was "truly the last resort for me." With respect to the CC&Rs, she stated that she was a real estate attorney, that she "kn[e]w that I'm in compliance with the CC&Rs," and that she had "spent over $5,000 soundproofing my home," and had "receipts of all the padding in my house." She also testified that she had "emails regarding [Ginsberg's] prior behavior with other neighbors," and had "talked to my real estate agent who has told me that the prior owner also had issues with Mr. Ginsberg."

H.L. then testified briefly, telling the court that when "Ginsberg and his wife don't get complete silence in the building, they bang frequently on

---

[1] While discussing the letter sent by Ginsberg's attorney in October 2023 in response to the cease and desist letter from Hinajon, the trial court asked whether that attorney was still Ginsberg's lawyer, and he responded "He is. But he's not involved in this yet. But he will be."

5

the ceiling, waking our dog up, causing just a lot of stress and disturbance in our life." He added that "I see firsthand the stress that it causes my fiancée. When we're out of the country celebrating our engagement, the only thing she's talking about is . . . I'm so stressed to go home to my own home. I don't know what's going to happen next." H.L. testified that there was a "a very clear pattern of escalating behavior," beginning with the banging on the ceiling, which "escalated to them feeling entitled to come up to our unit, to come bang on our door, [and] to tell my fiancée they can hear her in the shower. . . . I also think it's pretty notable that Mr. Ginsberg never really denied any of this behavior. He simply decided to say he was justified in doing so, and he felt entitled to it."

After giving Ginsberg an opportunity to cross-examine H.L., the trial court concluded that Ginsberg had created a "hellish situation" and that he had "for whatever reason . . . felt entitled . . . to disrespect your neighbors and to harass them in a way that's been described here on a continuous basis," constituting "total, severe, and pervasive and unlawful harassment," and that there was not "any mitigation or excuse for [his] behavior."

The trial court then issued a three-year restraining order, identical to the temporary restraining order already in place, requiring that Ginsberg stay three yards away from Hinajon and H.L. when at the parties' mutual residence, that he refrain from "banging on the ceiling," and that the parties have no personal contact except through counsel.

Ginsberg filed a notice of appeal.

6

## DISCUSSION

Code of Civil Procedure[2] section 527.6, subdivision (a)(1) provides that "[a] person who has suffered harassment . . . may seek a temporary restraining order and an order after hearing prohibiting the harassment as provided in this section." The legislative history states that, in comparison to prior law, section 527.6 " 'would establish an expedited procedure for enjoining acts of "harassment," as defined, including the use of temporary restraining orders . . . . The purpose of the [statute] is to provide quick relief to harassed persons.' " (*Smith v. Silvey* (1983) 149 Cal.App.3d 400, 405.) To provide such quick relief, "[a] request for the issuance of a temporary restraining order without notice under this section shall be granted or denied on the same day that the petition is submitted to the court." (§ 527.6, subd. (e).) Subject to the provisions governing continuances, a hearing on the petition shall be held "[w]ithin 21 days, or, if good cause appears to the court, 25 days from the date that a petition for a temporary [restraining] order is granted or denied." (§ 527.6, subd. (g).) "Compared to the normal injunctive procedures set forth in the Code of Civil Procedure, section 527.6 provides a quick, simple and truncated procedure. [Citation.] The statute provides for the proceeding to be completed in a matter of weeks and was drafted with the expectation that victims often would seek relief without the benefit of a lawyer. (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 970.)" (*Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 520–521 (*Yost*).)

The Legislature "offset the expedited procedures in section 527.6 with safeguards and several provisions limiting the scope of civil harassment restraining orders." (*Yost*, *supra*, 51 Cal.App.5th at p. 521.) One set of

---

[2] Further statutory references are to the Code of Civil Procedure.

7

safeguards "[en]sures that a person charged with harassment is given an opportunity to present his or her case." (*Id*. at p. 522.) Such a person "may file a response that explains, excuses, justifies or denies the alleged harassment" (§ 527.6, subd. (h)), and such response "may be written or oral, or both." (Cal. Rules of Court, rule 3.1160(d).) The respondent "shall be entitled, as a matter of course, to one continuance, for a reasonable period, to respond to the petition." (§ 527.6, subd. (o); see *Yost*, *supra*, at p. 522.) In addition, "[e]ither party may request a continuance of the hearing, which the court shall grant on a showing of good cause. The request may be made in writing before or at the hearing, or orally at the hearing. The court may also grant a continuance on its own motion." (§ 527.6, subd. (p)(1).)

**The Trial Court Did Not Prejudicially Err In Denying the Request for a Continuance**

As noted, Ginsberg argues that the trial court erred in failing to grant him a continuance under section 527.6, subdivision (o), relying on the "shall be entitled" language quoted above.

Hinajon responds that "[t]he correct question on appeal in this matter is not whether [Ginsberg] had a right to a continuance, but whether he properly *invoked* that right," and that Ginsberg "did not expressly request a continuance to *respond to the petition*," but rather that he sought a continuance "until we can get a lawyer in here." It is true that courts have expressly tied the language of section 527.6, subdivision (o) to the purpose of responding to the petition. (See *N.M. v. W.K.* (2024) 100 Cal.App.5th 978, 982–983 [rejecting husband's reliance on identical language in Family Code section 245, subdivision (a) because "[b]y the time he requested a continuance, he had *already* responded to the petition"]; *Goals for Autism v. Rosas* (2021) 65 Cal.App.5th 1041, 1046 ["[o]nce [respondent] filed his

response to the petition, [identical language in section 527.8,] subdivision (o) no longer obligated the court to grant a continuance"].)

Thus, it appears Hinajon has the better of the issue. But we need not address this issue, because we conclude that any error in denying Ginsberg's request for a continuance was harmless.

"[A]ny error in failing to grant a request for a continuance—whether mandatory or discretionary—is reversible only if it is tantamount to the denial of a fair hearing. (See *Cohen v. Herbert* (1960) 186 Cal.App.2d 488, 493–494 [discretionary continuance]; *Ross v. Figueroa* (2006) 139 Cal.App.4th 856, 865 [mandatory continuance].) There is no presumption of prejudice. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.) Instead, the burden to demonstrate prejudice is on the appellant." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527–528 (*Freeman*).)

Ginsberg has not carried that burden here. He does not allege any specific way in which denial of the continuance prejudiced him, nor does he allege any specific reason that granting it would have produced a reasonable probability of a different result. Instead, his opening brief asserts that the error was structural and requires reversal regardless of prejudice because it denied him "a full opportunity to present his . . . case" and " 'the right to be heard in a meaningful manner' " in violation of due process. We do not agree that the error was structural requiring reversal without consideration of prejudice.[3] (See *In re Marriage of Tara & Robert D.* (2024) 99 Cal.App.5th

---

[3] The cases cited by Ginsberg are clearly inapposite. *In re Marriage of D.S. & A.S.* (2023) 87 Cal.App.5th 926 did not involve a continuance at all, and reversed a domestic violence restraining order where the trial court issued that order "based solely on the written declarations of the parties," "did not invite either party to present their version of events," and "did not question either party or allow an opportunity for cross-examination on the

9

871, 888 (*Robert D.*) [rejecting argument of structural error where court denied continuance after father's counsel withdrew on the eve of trial and requiring father to show it was "reasonably probable that [he] would have achieved a more favorable result in the absence of the error"]; *Walker v. State Bar* (1989) 49 Cal.3d 1107, 1116 ["the general rule is that there is no due process right to counsel in civil cases"].)

On reply, Ginsberg acknowledges that he must show that if the continuance had been granted, "it is reasonably probable that [he] would have achieved a more favorable result" (*Robert D., supra*, 99 Cal.App.5th at p. 888), but simply asserts—without explanation, elaboration, or citation to the record—that if he "had been allowed to return with his attorney at a continued hearing date, his attorney would have had time to prepare a written or oral reply to [the] petition and the evidence could have established sufficient doubt to support the denial" of Hinajon's request for a restraining order. This is insufficient to carry his burden of demonstrating prejudice.[4]

disputed issues." (*Id.* at pp. 935–936.) *D.Z. v. L.B.* (2022) 79 Cal.App.5th 625 likewise did not involve a continuance, and reversed a civil harassment restraining order to the extent it prohibited appellant from taking certain actions because he "was not identified as a party to be restrained in [the] petition," and "the content of the petition and accompanying declaration gave no indication . . . that his behavior would be at issue at the hearing, or . . . that the hearing would result in an order expressly prohibiting certain actions on his part." (*Id.* at pp. 628, 635.)

[4] Similarly without merit is Ginsberg's argument that by telling him, "[a]nd so then, it's not really going to help a lot to get a lawyer," the trial court impermissibly gave him legal advice, violated her duty to remain fair and impartial, and denied him a fair trial. Hinajon was unrepresented by counsel at the hearing, as are most litigants in civil harassment restraining order cases, with the judge necessarily expected to play a far more "active role" in developing the facts, explaining procedural steps, asking relevant questions, and " 'otherwise protect[ing] [the parties'] due process rights.' " (*In re Marriage of D.S. & A.S., supra*, 87 Cal.App.5th at p. 935; *Yost, supra*, 51

10

After our own review of the reporter's transcript, we cannot agree that any error in failing to grant Ginsberg's request for a continuance was "tantamount to the denial of a fair hearing." (*Freeman, supra,* 192 Cal.App.4th at p. 523.) The trial court explained the requirements for a civil harassment restraining order and its consequences to Ginsberg, invited both parties to present their version of events, asked questions, and permitted Ginsberg to cross-examine H.L. Nor does the record reveal any prejudice to Ginsberg. Although he disputed whether Hinajon was in compliance with their building's CC&Rs and was observing the building's quiet hours, he did not deny the behavior that the court found to constitute severe harassment, including physically confronting Hinajon shortly after she moved in and asking her if she "was sleeping soundly last night," repeatedly banging on Hinajon's floor through his ceiling, banging on her back door to complain about noise, and looking into her apartment and through her trash, behavior for which the trial court expressly found there was no "mitigation or excuse." In short, Ginsberg has failed to demonstrate prejudice, and the order must be affirmed.

## DISPOSITION

The order is affirmed.

---

Cal.App.5th at p. 521.) We view the trial court's comment as an attempt to explain and guide Ginsberg with respect to the process, rather than an impermissible attempt to " 'throw the weight of [her] judicial position into a case . . . against the defendant.' " (*People v. Sturm* (2006) 37 Cal.4th 1218, 1237.)

11

_____

RICHMAN, ACTNG P.J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

(*Hinajon v. Ginsburg A170373*)